Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------x

|  |  |
|---|---|
| THE MANAGEMENT GROUP, LLC, ANDREW FOX, and LEE HEIMAN, | **SUMMONS** |

THE MANAGEMENT GROUP, LLC, ANDREW FOX,
and LEE HEIMAN,

                                     Plaintiffs,

               - against -

ANGEL MUSIC GROUP LTD., NEIL MOFFITT,
NICK McCABE, JESSIE ANGLES, ANU DHAMI,
ISABEL PIAGGI, and DAN A. VIDAL,

                                 Defendants.

-------------------------------------------------------------------------x

**SUMMONS**

Index No.

Date Filed:

Plaintiffs designate New York
County as the place of trial

The basis of venue is plaintiff
The Management Group, LLC's
residence in New York County

Plaintiff The Management
Group, LLC resides at:
485 Madison Avenue
New York, New York 10022

To the above-named defendants:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on plaintiffs' attorneys within 20 days after the service of this summons, exclusive of
the day of service (or within 30 days after the service is complete if this summons is not personally
delivered to you within the State of New York), and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      February 26, 2008

                                 DAVIDOFF MALITO & HUTCHER LLP

                                 By:_____

                                    Larry Hutcher
                                    Peter M. Ripin
                                    *Attorneys for Plaintiffs*
                                    605 Third Avenue
                                    New York, New York 10158
                                    (212) 557-7200

00370748

TO:   ANGEL MUSIC GROUP LTD.
2904 W. Horizon Ridge Parkway, Suite 121
Henderson, Nevada 89052

NEIL MOFFITT
2640 Mirabella Street
Henderson, Nevada 89052

NICK McCABE
1504 Bay Road, #1104
Miami Beach, FL 33139

JESSIE ANGLES
5724 SW 146 Court
Miami, FL 33183

ANU DHAMI
104 Calle Cuervo
San Clemente, CA 92672

ISABEL PIAGGI
6225 SW 87th Avenue
Miami, FL 33173

DAN A. VIDAL
4510 NE 2nd Avenue #4
Miami, FL 33137

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

THE MANAGEMENT GROUP, LLC,
ANDREW FOX and LEE HEIMAN,                          Index No.

                          Plaintiffs,

              - against -
                                                    **COMPLAINT**

ANGEL MUSIC GROUP LTD., NEIL MOFFITT,
NICK McCABE, JESSIE ANGLES, ANU DHAMI,
ISABEL PIAGGI, and DAN A. VIDAL,

                          Defendants.

-------------------------------------------------------------------x

        Plaintiffs, The Management Group, LLC ("TMG"), Andrew Fox ("Mr. Fox") and Lee

Heiman ("Mr. Heiman"), by and through their attorneys, Davidoff Malito & Hutcher LLP, by way

of Complaint against defendants Angel Music Group Ltd. ("Angel"), Neil Moffitt ("Moffitt"), Nick

McCabe ("McCabe"), Jessie Angles ("Angles"), Anu Dhami ("Dhami"), Isabel Piaggi ("Piaggi")

and Dan A. Vidal ("Vidal") (collectively, "Defendants"), allege and state as follows:

## NATURE OF THE ACTION

        1.      This action seeks to redress Defendants' shocking and blatant attack on plaintiffs'

business, as well as threats of physical violence directed against Mr. Fox. In short, plaintiffs'

former partner, Moffitt, has not only vowed to destroy plaintiffs' business by misappropriating and

exploiting plaintiffs' highly confidential and proprietary business information but has also

threatened Mr. Fox's very life. Simply put, Moffitt is a truly menacing figure and a bully who has

already physically assaulted Mr. Fox and bragged to Messrs. Fox, Heiman and their partners about

how he is engaged in money laundering and tax evasion in both the United States and the United

Kingdom.

00370756

2.     While plaintiffs and Moffitt were briefly partners, Moffitt and his co-conspirators McCabe, a former minority partner and employee of TMG, and Angles, Dhami, Piaggi and Vidal, former TMG employees, had access to plaintiffs' most confidential and proprietary information and trade secrets including, but not limited to, plaintiffs' business models and plans, plaintiffs' corporate strategies, financial and marketing plans, operational practices, sales figures, pricing and customer identities, specifications and preferences.  Armed with this highly proprietary and confidential information, these individual defendants and their business entity, Angel, have engaged in numerous acts of unfair competition by undercutting plaintiffs' prices, stealing plaintiffs' customers and soliciting plaintiffs' employees.  Indeed, Moffitt has vowed to destroy plaintiffs' business "piece by piece."

3.     Plaintiffs seek equitable relief in the form of an injunction against Defendants' acts of business piracy, a protective order against Moffitt to protect against his threats of physical violence and campaign of harassment and slander and an accounting to enable plaintiffs to ascertain the extent of Defendants' unlawful conduct and the damages caused thereby.  Plaintiffs also seek substantial monetary damages arising from the various Defendants':  (a) breaches of contract; (b) breaches of fiduciary duty; (c) unfair competition; (d) conversion; (e) misappropriation of trade secrets; (f) tortious interference with contractual and business relationships; and (g) fraud.

### THE PARTIES

4.     Plaintiff, The Management Group, LLC, is a New York limited liability company with its principal place of business located at 485 Madison Avenue, New York, New York 10022.

5.     Plaintiff, Andrew Fox, is an individual who currently resides in the State of New York.

6.     Plaintiff, Lee Heiman, is an individual who currently resides in the State of New

00370756

-2-

York.

7.     Defendant, Angel Music Group Ltd., is upon information and belief, a United Kingdom corporation with its principal place of business located at 2904 W. Horizon Ridge Parkway, Suite 121, Henderson, Nevada 89052.

8.     Defendant, Neil Moffitt, is an individual who, upon information and belief, currently resides at 2640 Mirabella Street, Henderson, Nevada 89052.

9.     Defendant, Nick McCabe, is an individual who, upon information and belief, currently resides at 1504 Bay Road, #1104, Miami Beach, Florida 33139.

10.    Defendant Jessie Angles, is an individual who, upon information and belief, currently resides at 5724 SW 146 Court, Miami FL 33183.

11.    Defendant Anu Dhami, is an individual who, upon information and belief, currently resides at 104 Calle Cuervo, San Clemente, CA 92672.

12.    Defendant Isabel Piaggi is an individual who, upon information and belief, currently resides at 6225 SW 87th Avenue, Miami FL 33173.

13.    Defendant Dan A. Vidal is an individual who, upon information and belief, currently resides at 4510 NE 2nd Avenue #4, Miami FL 33137.

### JURISDICTION AND VENUE

14.    This Court has personal jurisdiction over Angel, Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal pursuant to CPLR 302(a) because these defendants transact business within the State of New York.

15.    Additionally, this Court has personal jurisdiction over defendants Angel and Moffitt pursuant to contract, to wit: paragraph 14 of the Agreement dated as of March 1, 2007 by and among The Management Group, LLC, Angel Music Group Ltd, Neil Moffitt, Peter Haywood and

James Algate (the "Termination Agreement"). The Termination Agreement provides, in relevant part:

> Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, or otherwise relating to, this Agreement shall be brought [by any party against the other] in the Federal or state courts located in the County of New York, State of New York.

16.     Additionally, this Court has personal jurisdiction over defendant McCabe pursuant to contract, to wit: paragraph 13(f) of the Employment Agreement dated as of February 3, 2005, by and among The Management Group, LLC and Nick McCabe (the "Employment Agreement"), as modified by the parties thereto by letter dated as of June 20, 2007 (the "Modification Agreement"). The Employment Agreement provides, in relevant part:

> In the event of a dispute arising under this Agreement, the parties hereto irrevocably submit to the exclusive jurisdiction of the Federal and State courts located in the County and State of New York and each waives any objection thereto based on lack of venue, forum non conveniens or any similar-type grounds.

17.     Venue is proper in New York County pursuant to the contractual provisions cited in paragraphs 15 and 16 above, as well as pursuant to CPLR 503(a) because plaintiff The Management Group, LLC's principal place of business is located in the State of New York, New York County.

## FACTUAL ALLEGATIONS

### A.     TMG, Angel and Their Relationship

18.     TMG is a holding company which owns Track Entertainment ("Track"), a diversified entertainment, media and lifestyle company. Track's media properties include the world's leading online nightlife destination, Clubplanet.com, event and lifestyle oriented websites including NewYears.com, nocheLatina.com and CoolJunkie.com, and an online ticketing agent, Wantickets.com.

19.     Mr. Fox is the Chief Executive Officer and is an owner and operator of TMG and its

affiliated companies and websites.

20.    Mr. Heiman is the President and is an owner and operator of TMG and its affiliated companies and websites.

21.    Angel is an entertainment/event management company for dance music groups which is responsible for several large scale music festivals in the United Kingdom, including the "Global Gathering Festival."

22.    Upon information and belief, Moffitt is a citizen of the United Kingdom and the Chairman and Chief Executive Officer of Angel.

23.    In or about August 2005, Mr. Fox met Moffitt at the Global Gathering Festival and decided to work together to plan the first Global Gathering in the United States in March 2006.

24.    During the period leading up to the show, Mr. Fox began discussing a possible merger with Moffitt. Among other things, Messrs. Fox and Heiman believed that this acquisition would complement TMG's existing business and provide opportunities for expanding Angel's allegedly highly profitable festivals to other areas around the world, including the United States, thereby extending TMG's production business, services and relationships with global sponsors. In addition, ticketing for the festivals would be handled through Wantickets.com, TMG's proprietary ticketing property. Finally, the acquisition would extend the reach of TMG's other proprietary websites, including Clubplanet.com, and TMG's sales division which worked with Fortune 500 companies which advertised on these websites.

**B.    The Purchase Agreement**

25.    By an Agreement dated as of May 19, 2006 (the "Purchase Agreement"), TMG agreed to purchase all of Angel's shares from Moffitt and his two partners.

26.    After the merger, Messrs. Heiman, Fox and Moffitt each owned 23.75% of TMG and

served as TMG's sole Managers.  Although Moffitt's partners executed employment agreements which TMG prepared for all three sellers, Moffitt failed to sign his agreement.

### C.    The Disastrous Post-Merger Events

27.    After the closing, Angel produced two smaller shows which were both unsuccessful and lost over 700,000 GBP.

28.    In addition, Angel's updated financial statements reflected a debt of 325,000 GBP allegedly incurred by Moffitt which had never been previously recorded on Angel's books and records.  Obviously, Messrs. Heiman and Fox were shocked to learn of this.  When they inquired about this alleged indebtedness, they were told that Moffitt had "deferred and altered" his payment schedule to Angel prior to the acquisition.  Ultimately, Messrs. Heiman and Fox concluded that Moffitt had misappropriated more than $600,000 from Angel for his own benefit which he failed to previously disclose.

29.    To make matters worse, Moffitt grossly abused his expense account and spent more than $25,000 per month on personal expenses including airfare for his wife and paramour to visit him in Las Vegas where he was now living.  At the same time, Moffitt began second-guessing TMG's decisions and criticizing almost every aspect of its operations.  As TMG's cash flow grew progressively worse, Moffitt simply stopped working.

30.    By September 2006, TMG's losses totaled approximately $1 million.

31.    Even more ominously, however, Moffitt began bullying and threatening Mr. Fox. On one occasion, while dining at a London restaurant, Messrs. Heiman and Fox attempted to question Moffitt about his excessive spending and expenses and he erupted in a childish fit of rage and literally pushed Mr. Fox off his chair to the floor!  Another time, when Mr. Fox was leaning over to put his briefcase into the trunk of his car, Moffitt pushed him into the trunk and said he

00370756                              -6-

could make Mr. Fox "disappear." In addition, Moffitt regularly regaled Messrs. Heiman and Fox with stories of how he resorted to violence to achieve his goals. For example, he advised us that, on one occasion, he was able to "persuade" his ex-partner to terminate their business relationship by dangling him upside down over a banister with his head directly above a cement floor. He seemed particularly proud -- and repeatedly bragged -- about the fact that he did not pay taxes in either the U.S. or the U.K. In short, Moffitt considers himself "above the law."

32.     Prior to the merger, both TMG and Angel had been sued for trademark infringement by an individual claiming ownership of the name "Global Gathering" (the "Global Gathering Litigation"). Thereafter, as the Global Gathering Litigation grew more heated, TMG was forced to pay an exorbitant amount of legal fees – totaling more than $500,000 – to the attorneys whom Moffitt engaged to represent TMG.

33.     In short, the merger with Angel had turned into a nightmare. When Moffitt approached Messrs. Heiman and Fox in February 2007 and suggested that the parties terminate the Purchase Agreement and limit their relationship to a proposed joint venture in Canada, Messrs. Heiman and Fox happily agreed.

**D.      The Termination Agreement**

34.     The Termination Agreement terminated the Purchase Agreement and "unwound" the transaction. However, the parties agreed that within sixty (60) days following the execution of the Termination Agreement, they would negotiate a joint venture arrangement in Canada in good faith using reasonable efforts. Pursuant to paragraph 5 of the Termination Agreement, the parties agreed that the work of the joint venture would be performed by a corporate entity owned equally by TMG and Angel, that this entity would employ both of TMG's Canadian employees, Stephane McGarry and Sol Shafer, and that Angel would reimburse TMG for start-up expenses totaling $32,000 prior

to any division of net profits.

35.    The parties also agreed that as part of the termination process certain restrictive

covenants were necessary.  Accordingly, in paragraph 11 of the Termination Agreement, the parties

agreed and acknowledged that they each had access to, and acquired, confidential information from

each other and that the use or disclosure of this information would be contrary to the interests of the

party whose information it was.  Thus, the Termination Agreement provided:

> The term "Confidential Information" as used in this Agreement
> means (a) confidential information of one of them, including
> without limitation, information received from third parties,
> including clients, under confidential conditions, and (b) other
> technical, business or financial information or trade secrets or
> proprietary information (including but not limited to, account
> records, client information, confidential plans for the creation
> or disposition of products, product development plans,
> marketing strategies and financial data and plans) .... The
> [Parties], on behalf of themselves and their Affiliates,
> understand and agree that such Confidential Information has
> been disclosed in confidence and for use only in the context of
> the Purchase Agreement and the consummation of the
> transactions contemplated thereunder.  The [P]arties on behalf
> of themselves and their Affiliates, understand and agree that (i)
> they will keep such Confidential Information confidential at all
> times hereafter, and (ii) they will not make use of Confidential
> Information on their own behalf, or on behalf of any third
> party.

(Emphasis added.)

36.    In addition, paragraph 9 of the Termination Agreement provided that during the term

of the joint venture and for twelve months thereafter, neither party would:

> (a) [E]ither directly or indirectly, for itself or for any other person
> or entity, (i) call upon, solicit or take away, any person then
> employed by either of them or (ii) knowingly employ any
> employee of either of them who voluntarily terminates such
> employment until 12 months have passed following the
> termination of such employment, unless such condition is waived
> by the Company in writing . . ..

> (b) [E]ither directly or indirectly, for itself or for any other person
> or entity, enter into any agreement, or assist any other person or
> entity in entering into any agreement or other arrangement
> regarding any projects or clients introduced by the Company or
> [Angel] by the other, or acquired or developed by the Joint
> Venture prior to or during the term of the Joint Venture unless the
> Company has ceased business relationships in relation to the
> project or the client prior to the solicitation.

37.     In paragraph 2 of the Termination Agreement, Angel agreed to use its best efforts to

secure the landlord's consent to TMG's assignment to Angel of the Las Vegas lease where Moffitt

had his office. In addition, Angel agreed to assume and be responsible for the payment of rent.

38.     In paragraph 3 of the Termination Agreement, Angel agreed to pay all future legal

fees in the Global Gathering Litigation and to use its best efforts to cooperate with TMG in its

efforts to extricate itself from that lawsuit. TMG agreed that Angel was the owner of the rights to

the name "Global Gathering."

### E.     Defendants' Breaches of the Termination Agreement and
### Other Wrongful Conduct Designed to Destroy TMG's Business

39.     Unfortunately, shortly after executing the Termination Agreement, Moffitt began

disavowing each of the obligations which he had agreed to. First, he no longer wanted to be part of

the Canadian joint venture and would not reimburse TMG for its start-up costs of $32,000. Instead,

Moffitt attempted to solicit the head of TMG's Canadian operation, Mr. McGarry, to work for

Angel. Although Mr. McGarry declined these entreaties, upon information and belief, Moffitt

continues to solicit Mr. McGarry. In total, TMG lost approximately $100,000 as a result of

Moffitt's breach of the joint venture provision.

40.     In addition, Angel breached its obligation to pay all future legal fees incurred in the

Global Gathering Litigation and to use its best efforts to extricate TMG from that lawsuit. On the

contrary, shortly after executing the Termination Agreement, TMG was advised that Angel had

reached its own separate settlement in the Global Gathering Litigation leaving TMG as the only

remaining defendant in a lawsuit alleging infringement of a trademark that TMG never owned! Needless to say, TMG did not receive advance notice of the settlement and was not informed of the settlement amount. To make matters worse, TMG's attorney was subsequently advised by plaintiff's attorney in the Global Gathering Litigation that Moffitt had offered to assist the plaintiff in the prosecution of this lawsuit against TMG!

41.     Not surprisingly, Angel also did not comply with its obligation to use its best efforts to secure the landlord's consent to the assignment of the Las Vegas lease and to assume and be responsible for the payment of the rent. On the contrary, shortly after executing the Termination Agreement, Moffitt advised Messrs. Heiman and Fox that he was moving out of the space and leaving them "on the hook" for the lease payments. Ultimately, TMG was required to pay the landlord $47,000 to terminate the lease.

42.     In June 2007, plaintiffs received a phone call from McCabe, TMG's Chief Creative Officer, who advised that he was resigning from TMG. McCabe had been a minority partner and worked for TMG for more than two years, was instrumental in developing creative campaigns for TMG's key client, Pepsi, and was the account manager for Bacardi, another one of TMG's most important clients. Since McCabe was such an important part of TMG's team, plaintiffs asked him to reconsider and offered him a six month extension on his Employment Agreement. Alternatively, plaintiffs reminded McCabe that if McCabe left, McCabe would be bound by the confidentiality, non-solicitation and non-competition provisions set forth in his Employment Agreement.

43.     In particular, paragraph 10 of McCabe's Employment Agreement provided:

> You shall keep secret all confidential matters of Company, and
> shall not disclose them to anyone outside of Company, either
> during or after your employment with Company, except disclosure
> of confidential matters will be permitted: (i) to Company, its
> affiliates and their respective advisors; (ii) if such confidential

matters have previously become available to the public without your assistance or involvement; (iii) if required by any court or governmental agency or body or as otherwise required by law; (iv) if necessary to establish or assert your rights hereunder or under Company's Operating Agreement; or (v) if expressly consented to by Company.  You shall deliver promptly to Company upon termination of your employment, or at any time Company may request, all confidential memoranda, notes, records, reports and other documents (and all copies thereof) relating to the business of Company which you may then possess or have under your control.

44.     Paragraph 5(b) of McCabe's Employment Agreement provided:

During the Non-Solicitation Period (defined below), neither you nor any Related Person (defined below) shall knowingly, either directly or indirectly, for himself or for any other person or entity, (i) call upon, solicit or take away, or attempt to call upon, solicit or take away, any person then employed by Company or (ii) knowingly employ any employee of Company who voluntarily terminates such employment until twelve (12) months have passed following termination of such employment, unless such condition is waived by Company in writing.  "Non-Solicitation Period" shall mean the period from the date hereof until twelve (12) months after the termination of your employment with Company.  "Related Person" shall mean any person or entity who or which, directly or indirectly, is controlled by or otherwise affiliated with you or any person who is a member of your family.

45.     Paragraph 5(c) of McCabe's Employment Agreement provided:

During the term of your employment with Company and for the twelve (12) months following termination of such employment, neither you nor any Related Person shall knowingly, either directly or indirectly, for himself or for any other person or entity, enter into any agreement, or assist any other person or entity in entering into any agreement or other arrangement regarding any projects or clients introduced to Company or acquired or developed by Company or you prior to or during the term of your employment by Company.

46.     Shortly after plaintiffs reminded McCabe of these provisions, McCabe retained the

same lawyer who had represented Moffitt.  After several weeks of negotiations, TMG agreed to

modify McCabe's Employment Agreement to allow him to continue working with Bacardi.  TMG

based this very hard decision solely upon McCabe's representation that if TMG allowed McCabe to

since its budget for the Los Angeles event was much tighter than for previous events, it could not "accommodate" fees for both McCabe and TMG. In addition, McCabe stated that he would be "consulting and coordinating" the overall show and Bacardi would use a "small local vendor at a much lower fee" to handle production.

49.     Thereafter, however, TMG learned that Moffitt's partner, Peter Haywood, the Managing Director of Angel, had flown in from the UK and been hired as a "consultant" to oversee the November 2007 Los Angeles event and that Angel would be producing the entire March 2008 Miami event. In addition, TMG discovered that both McCabe and Angles were now employed by Angel. In short, Moffitt had solicited McCabe and Angles and thereafter fraudulently conspired with them to steal Bacardi from TMG.

50.     When TMG confronted Moffitt about this egregious betrayal, he was extremely arrogant and unapologetic. Moffitt stated that he was extremely "bitter" towards TMG and Mr. Fox, in particular; that TMG would regret ever "crossing swords" with Moffitt; and that he intended to "destroy" TMG and all of its affiliated properties. Significantly, both Moffitt and his co-conspirators, defendants McCabe, Angles, Dhami, Piaggi and Vidal, had access to TMG's most confidential and proprietary information and trade secrets, including, but not limited to, TMG's business models and plans, TMG's corporate strategies, financial and marketing plans, operational practices, sales figures, pricing and customer identities, specifications and preferences. Armed with this and using highly proprietary and confidential information, Defendants are intent on destroying TMG's business piece-by-piece.

51.     First, knowing full well that TMG had actively sought to acquire NapkinNights.com, a nightlife website which directly competes with TMG's own website, Clubplanet.com, Moffitt did an end run around TMG and instead secured an interest in the website for Angel. In addition,

Moffitt entered into a joint venture with Trinity St., a ticketing company which Moffitt knew we were also seeking to do a joint venture with and which competes directly with TMG's own proprietary ticketing vehicle, Wantickets.com. Indeed, Moffitt solicited and stole TMG's sales representative for Wantickets.com, defendant Dhami, so that she could instead work directly for Trinity St. and NapkinNights. Significantly, Dhami is now using TMG's confidential information to wrongfully solicit its customers. In total, Moffitt wrongfully solicited seven (7), and eventually stole five (5), of TMG's employees in violation of the confidentiality and non-solicitation provisions of the Termination Agreement.

52.     Thus, in or about December 2007, Moffitt solicited and stole defendants Piaggi and Vidal, TMG's regional sales manager and national photo editor, respectively, both of whom had access to highly confidential information concerning TMG's customers and pricing for its proprietary website, CoolJunkie.com. Thereafter, Piaggi and Vidal went to work for Angel and are now using TMG's confidential information to wrongfully solicit its customers.

53.     In addition, Defendants engaged in numerous other acts of unfair competition by undercutting TMG's prices and soliciting and/or stealing TMG's customers and employees. Indeed, only recently, the joint venture between Angel and Trinity St. used TMG's confidential information to steal Tiesto, a $1,000,000 client of TMG. In short, Defendants' conspiracy to exploit and misappropriate TMG's confidential information and steal TMG's business was so brazen that Angel submitted the following entry to Wikipedia, the free online encyclopedia:

> In June of 2006, [Angel] merged with the United States company
> Track Entertainment, after partnering with them on the
> successful US version of the Global Gathering festival in March
> of 2006. The merger gave them a solid footprint in all the major
> markets in the United States. The joint venture was short-lived
> and [Angel] now competes directly with Track through new joint
> ventures with the photo community web site Napkin Nights,

> event producers Live Nation, and the interactive services
> company Trinity Street.

(Emphasis added.)

54.     As if this heinous business piracy were not enough, Moffitt has also made threatened

Mr. Fox's life; slandered and disparaged Messrs. Heiman and Fox to their business associates; and

taunted Messrs. Heiman and Fox with emails in which he reiterated his intention of destroying

TMG's business.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BY FOX AND HEIMAN AGAINST MOFFITT FOR A PERMANENT INJUNCTION)

55.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1"

through "54" hereof as if set forth in full herein.

56.     Moffitt's physically violent conduct toward Mr. Fox, and his unlawful threats, have

and will continue to cause irreparable harm to Messrs. Fox and Heiman.

57.     By reason of the foregoing, Messrs. Fox and Heiman are entitled to permanent

injunctive relief directing Moffitt to: (a) stay away from Messrs. Fox and Heiman, their wives,

children and/or other family members at any and all locations, including, but not limited to, their

homes, places of business, schools and/or day care centers; (b) refrain from communicating with

Messrs. Fox and Heiman, their wives, children and/or other family members by any means

whatsoever, including, but not limited to, mail, facsimile, email, telephone and voicemail; (c)

refrain from assaulting, stalking, harassing, menacing, recklessly endangering, intimidating,

threatening or annoying Messrs. Fox and Heiman, their wives, children and/or other family

members; and (d) refrain from making any statements, whether written or oral, public or private,

that disparage, denigrate or defame Messrs. Fox and Heiman, their wives, children and/or other

family members.

58.     Messrs. Fox and Heiman have no adequate remedy at law.

-15-

## AS AND FOR A SECOND CAUSE OF ACTION
## (BY TMG AGAINST ALL DEFENDANTS FOR A PERMANENT INJUNCTION)

59.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "58" hereof as if set forth in full herein.

60.   Pursuant to the Termination Agreement, Angel and Moffitt were prohibited from unfairly competing with TMG, soliciting its clients and employees, and disclosing its confidential and proprietary information.

61.   Pursuant to his Employment Agreement, McCabe was similarly prohibited from unfairly competing with TMG, soliciting its clients and employees, and disclosing its confidential and proprietary information.

62.   Similarly, under New York common law, all of the Defendants were prohibited from unfairly competing with TMG by using its confidential and proprietary information to secure an advantage over TMG.

63.   As set forth above, Angel and Moffitt have breached their contractual, fiduciary and common law obligations by: (a) soliciting TMG's employees, including but not limited to, Stephane McGarry and defendants McCabe, Angles, Dhami, Piaggi and Vidal; (b) unfairly competing with TMG, including but not limited to, through the acquisition of NapkinNights.com and through the joint venture with Trinity Street; and (c) using TMG's confidential and proprietary information and trade secrets to compete with TMG and to destroy TMG's business, including but not limited to undercutting TMG's prices, stealing customers and stealing business opportunities.

64.   As also set forth above, defendants McCabe, Angles, Dhami, Piaggi and Vidal breached their contractual, fiduciary and/or common law obligations by: (a) soliciting TMG's employees; (b) unfairly competing with TMG through their employment with Angel; and (c) using

TMG's confidential and proprietary information and trade secrets to injure and destroy TMG's business including, but not limited to, assisting his current employer, Angel, to undercut TMG's prices, steal TMG's customers and steal TMG's business opportunities.

65.    TMG has no adequate remedy at law.

66.    By reason of the foregoing, TMG is entitled to a permanent injunction enjoining and restraining Defendants from: (a) soliciting TMG's employees; (b) unfairly competing with TMG; and (c) using TMG's confidential and proprietary information.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(BY TMG AGAINST ANGEL, MOFFITT AND MCCABE FOR BREACH OF CONTRACT)**

67.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "66" hereof as if set forth in full herein.

68.    The Termination Agreement is a valid and binding contract that seeks to protect TMG's property, confidential information, trade secrets, customer and personnel relationships, and good will.

69.    McCabe's Employment Agreement is a valid and binding contract that seeks to protect TMG's property, confidential information, trade secrets, customer and personnel relationships, and good will.

70.    Pursuant to the Termination Agreement, Angel and Moffitt were prohibited from unfairly competing with TMG, soliciting its customers, soliciting its employees and using or disclosing TMG's confidential and proprietary information and trade secrets.

71.    Pursuant to the Employment Agreement, McCabe was prohibited from unfairly competing with TMG, soliciting its customers (except, pursuant to the Modification Agreement, Bacardi), soliciting its employees and using or disclosing TMG's confidential and proprietary

information and trade secrets.

72.　Angel and Moffitt have breached and continue to be in breach of the Termination Agreement, by reason of their having: (a) solicited TMG's employees; (b) unfairly competed with TMG; and (c) used TMG's confidential and proprietary information. Additionally, Angel has breached and continues to be in breach of the Termination Agreement by reason of its having: (i) failed to proceed with the Canadian Joint Venture; (ii) failed to reimburse TMG for the start-up expenses incurred in connection with the Canadian Joint Venture; (iii) failed to pay legal fees incurred by TMG in the Global Gathering Litigation; (iv) failed to use its best efforts to extricate TMG from the Global Gathering Litigation; and (v) failed to secure the landlord's consent to the assignment of the Las Vegas lease and to assume and be responsible for the payment of the rent.

73.　McCabe has breached and continues to be in breach of his Employment Agreement by reason of his having: (a) solicited TMG's customers and employees; (b) unfairly competed with TMG; and (c) used TMG's confidential and proprietary information.

74.　As a direct and proximate result of Angel, Moffitt and McCabe's breaches of their respective contracts, TMG has suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of confidentiality of its trade secrets and other damages.

75.　By virtue of the foregoing, Angel, Moffitt and McCabe are further liable to TMG for compensatory damages in an amount to be determined at trial, but in no event less than $10,000,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (BY TMG AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY)

76.　Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "75" hereof as if set forth in full herein.

77.     At all relevant times, defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal owed fiduciary duties of fidelity and loyalty to TMG and, additionally, were obligated to act in good faith and to deal fairly with TMG.

78.     Defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal breached their fiduciary duties by, inter alia, misappropriating, and then using, TMG's confidential and proprietary information and trade secrets learned while employed by TMG.

79.     As a direct and proximate result of the wrongful conduct of defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal, TMG suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of confidentiality of its trade secrets and other damages.

80.     By virtue of the foregoing, TMG is entitled to receive an amount equal to the total remuneration TMG paid to defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal during their employment with TMG. Additionally, defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal are further liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (BY TMG AGAINST ANGEL
### FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY)

81.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "80" hereof as if set forth in full herein.

82.     As employees of TMG, defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal owed TMG a duty of fidelity and loyalty.

83.     The theft by defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal of TMG's confidential information and use of such information to set up or further a competing business constitutes breaches of their fiduciary duties to TMG.

84.     Angel knew about the theft of TMG's confidential information by defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal and participated in such breach of fiduciary duties.

85.     By virtue of the foregoing, Angel is liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (BY TMG AGAINST ALL DEFENDANTS FOR UNFAIR COMPETITION)

86.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "85" hereof as if set forth in full herein.

87.     Through the wrongful conduct of defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal, as more fully described above, Angel is engaged in an unfair method of competition and/or deceptive acts or practices.

88.     As a results of Defendants' conduct, TMG has suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of the confidentiality of its trade secrets and other damages.

89.     By virtue of the foregoing, Defendants are liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (BY TMG AGAINST ALL DEFENDANTS FOR CONVERSION)

90.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "89" hereof as if set forth in full herein.

91.     As described above, Defendants have exercised and continue to exercise unauthorized dominion and control over TMG's property, including confidential and proprietary information belonging to TMG.

92.  TMG has an immediate right to possession of such property.

93.  As a result of Defendants' conduct, TMG has suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of the confidentiality of its trade secrets and other damages.

94.  By virtue of the foregoing, Defendants are further liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (BY TMG AGAINST ALL DEFENDANTS FOR MISAPPROPRIATION OF TRADE SECRETS)

95.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "94" hereof as if set forth in full herein.

96.  TMG's business models and plans, corporate strategies, financial and marketing plans, operational practices, sales figures, pricing and customer identities, specifications and preferences constitute trade secrets and are subject to protection.

97.  This information was kept secret by TMG and was not generally known or available to third-parties to whom it would provide actual or potential economic value.

98.  This information was subjected to reasonable security measures to maintain secrecy and confidentiality.

99.  As described above, Defendants misappropriated TMG's trade secrets by acquiring such trade secrets through improper means and then improperly using such trade secrets.

100.  As a direct and proximate cause of Defendants' conduct, TMG has suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of the confidentiality of its trade secrets and other damages.

101.  By virtue of the foregoing, TMG is entitled to immediate injunctive relief, and

Defendants are further liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

### AS AND FOR A NINTH CAUSE OF ACTION
### (BY TMG AGAINST ALL DEFENDANTS FOR TORTIOUS
### INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS)

102.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "101" hereof as if set forth in full herein.

103.   As described above, TMG has long-standing contractual and/or business relationships with its clients and personnel. Further, at the time of the wrongful acts committed by Defendants, TMG had a tangible expectancy of continuing the relationships which TMG had developed with those clients and personnel.

104.   At all relevant times herein, Defendants were aware of those business relationships.

105.   Defendants intentionally and tortiously, with improper motive and without justification or excuse, interfered and/or are planning or attempting to interfere with those relationships.

106.   TMG has suffered damages due to Defendants' conduct because but for Defendants' inducement, certain TMG personnel and clients including, but not limited to, Bacardi would not have terminated their relationships with TMG and TMG would have obtained contracts with other clients and personnel with whom TMG had prospective business relationships.

107.   Defendants have specifically interfered with TMG's prospective business relationships and have damaged the goodwill that TMG has worked to achieve.

108.   As a result of Defendants' conduct, TMG has suffered and will continue to suffer substantial financial loss, loss of goodwill, loss of the confidentiality of its trade secrets and other damages.

109.   By virtue of the foregoing, TMG is entitled to immediate injunctive relief and Defendants are further liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

## AS AND FOR A TENTH CAUSE OF ACTION
## (BY TMG AGAINST ALL DEFENDANTS FOR *PRIMA FACIE* TORT)

110.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "108" hereof as if set forth in full herein.

111.   Defendants, acting in concert and each with the aid of the others, have conspired to cause, and have in fact caused, injury to TMG through all of the wrongful conduct described above.

112.   Defendants have undertaken such conduct with the intent to cause injury to TMG.

113.   Defendants' conduct described herein is generally culpable and not justifiable under the circumstances.

114.   As a direct and proximate result of Defendants' tortious conduct, TMG has suffered damages.

115.   As such, Defendants are liable to TMG for compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## (BY TMG AGAINST McCABE FOR FRAUDULENT INDUCEMENT TO CONTRACT)

116.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "115" hereof as if set forth in full herein.

117.   In order to induce TMG to enter into the Modification Agreement, McCabe made the representations to TMG detailed in paragraph 46 above.

118.   Each of the representations made by McCabe were material to TMG's decision to enter into the Modification Agreement.

119.   McCabe made the representations with the intent that TMG would rely upon them in determining to enter into the Modification Agreement.

120.   McCabe's representations were false, as described above in paragraphs 48 through 49.

121.   McCabe was aware of the falsity of his representations at the time that the representations were made.

122.   TMG actually relied on McCabe's representations when it entered into the Modification Agreement. TMG's reliance on McCabe's representations was reasonable in that TMG had no knowledge of the falsity of the representations and had no reason to know that the representations were false.

123.   McCabe's actions in making the above misrepresentations to TMG as an inducement to enter into the Modification Agreement was malicious, oppressive and fraudulent.

124.   Because of McCabe's fraud, TMG is entitled to rescission of the Modification Agreement.

125.   By reason of McCabe's fraudulent inducement of TMG to enter into the Modification Agreement, TMG has sustained and will continue to sustain substantial damages consisting of the loss of Bacardi as a client of TMG and of TMG's out-of-pocket expenses incurred in connection with the negotiation, drafting and execution of the Modification Agreement.

126.   As a direct and proximate result of McCabe's fraudulent conduct, the Modification Agreement should be rescinded and TMG awarded compensatory and punitive damages in an amount to be determined at trial, but in no event less than $10,000,000.

127.   TMG has no adequate remedy at law.

## AS AND FOR AN TWELFTH CAUSE OF ACTION
## (BY TMG AGAINST ALL DEFENDANTS FOR AN ACCOUNTING)

128. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "127" hereof as if set forth in full herein.

129. As set forth above, Defendants have all participated in, or been the beneficiaries of, wrongful conduct committed by the Defendants against TMG.

130. By reason of the foregoing, Defendants are required to account to TMG for the profits realized at TMG's expense including all revenue generated by Defendants in connection with their theft and misuse of TMG's confidential and proprietary information and trade secrets, so that TMG can determine the totality of its damages.

131. TMG has no adequate remedy at law for the relief requested by this cause of action.

WHEREFORE, plaintiffs, The Management Group, LLC, Andrew Fox and Lee Heiman, demand judgment against defendants, Angel Music Group Ltd., Neil Moffitt, and Nick McCabe, Jessie Angles, Anu Dhami, Isabel Piaggi, and Dan A. Vidal, as follows:

(a) On the first cause of action for a permanent injunction, enjoining, restraining and/or directing Moffitt to: (a) stay away from Messrs. Fox and Heiman, their wives, children and/or other family members at any and all locations, including, but not limited to, their homes, places of business, schools and/or day care centers; (b) refrain from communicating with Messrs. Fox and Heiman, their wives, children and/or other family members by any means whatsoever, including, but not limited to, mail, facsimile, email, telephone and voicemail; (c) refrain from assaulting, stalking, harassing, menacing, recklessly endangering, intimidating, threatening or annoying Messrs. Fox and Heiman, their wives, children and/or other family members; and (d) refrain from making any statements, whether written or oral, public or private, that disparage, denigrate or defame Messrs. Fox and/or Heiman, their wives, children and/or other family members.

00370756                                          -25-

(b)     On the second cause of action for a permanent injunction, enjoining and restraining Defendants from: (a) soliciting TMG's employees; (b) unfairly competing with TMG; and (c) using TMG's confidential and proprietary information;

(c)     On the third cause of action for breach of contract, awarding TMG compensatory damages against Angel, Moffitt and McCabe according to the proof, but in any event, in an amount no less than $10,000,000;

(d)     On the fourth cause of action for breach of fiduciary duty, awarding TMG compensatory and punitive damages against defendants Moffitt, McCabe, Angles, Dhami, Piaggi and Vidal, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(e)     On the fifth cause of action for aiding and abetting breach of fiduciary duty, awarding TMG compensatory and punitive damages against defendant Angel according to the proof, but in any event, in an amount no less than $10,000,000;

(f)     On the sixth cause of action for unfair competition, awarding TMG compensatory and punitive damages against Defendants, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(g)     On the seventh cause of action for conversion, awarding TMG compensatory and punitive damages against Defendants, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(h)     On the eighth cause of action for misappropriation of trade secrets, awarding TMG compensatory and punitive damages against Defendants, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(i)     On the ninth cause of action for tortious interference with contractual and business relationships, awarding TMG compensatory and punitive damages against Defendants, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(j)     On the tenth cause of action for *prima facie* tort, awarding TMG compensatory and punitive damages against Defendants, jointly and severally, according to the proof, but in any event, in an amount no less than $10,000,000;

(k)     On the eleventh cause of action for fraudulent inducement to contract, rescinding the Modification Agreement and awarding TMG compensatory and punitive damages against McCabe, according to the proof, but in any event, in an amount no less than $10,000,000;

(l)     On the twelfth cause of action for an accounting, requiring Defendants to account to TMG for the total amount of revenue generated by Defendants in connection with their theft and misuse of TMG's confidential and proprietary information and trade secrets; and

(n)     All together with prejudgment interest, the costs and disbursements of this action, including reasonable attorneys' fees, and for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 26, 2008

DAVIDOFF MALITO & HUTCHER LLP

By: _____
       Larry Hutcher
       Peter M. Ripin

*Attorneys for Plaintiffs*

605 Third Avenue
New York, New York 10158
(212) 557-7200