Ronald Richards, Esq.
The Law Offices of Ronald Richards
and Associates
P.O. Box 11480
Beverly Hills, California 90213
(310) 556-1001

-and-

Robert Goldstein, Esq.
Michael Liberman, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500

Attorneys for Defendants Angel Music
Group Ltd. And Neil Moffitt

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

THE MANAGEMENT GROUP, LLC, ANDREW
FOX, and LEE HEIMAN,

                     Plaintiffs,

          - against -

                            08-02172(PKC)

ANGEL MUSIC GROUP LTD., NEIL MOFFITT,
NICK McCABE, JESSIE ANGLES, ANU DHAMI,
ISABEL PIAGGI, and DAN A. VIDAL,

                     Defendants.

------------------------------------- x

## ANSWER OF ANGEL MUSIC GROUP LTD AND NEIL MOFFIT
## TO PLAINTIFFS' AMENDED COMPLAINT

Defendants Angel Music Group Ltd. ("AMG") and Neil Moffit, by their attorneys

Ronald Richards, Esq., The Law Offices of Ronald Richards and Associates, P.O. Box 11480,

Beverly Hills, California 90213 and Epstein Becker & Green, P.C., 250 Park Avenue, New York, New York 10177, for their Answer to Plaintiffs' Amended Complaint, allege as follows:

       1.     Deny the allegations in paragraph 1.

       2.     Deny the allegations in paragraph 2.

       3.     Deny the allegations in paragraph 3 except admit that Plaintiffs seek an injunction, a protective order, an accounting, and monetary damages as a remedy for their claims and deny that plaintiffs are entitled to any relief.

       4.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 4.

       5.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 5.

       6.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 6.

       7.     Deny the allegations in paragraph 7 except that AMG is a United Kingdom corporation.

       8.     Admit the allegations in paragraph 8.

       9.     Deny the allegations in paragraph 9.

       10.     Deny the allegations in paragraph 10.

       11.     Deny the allegations in paragraph 11.

       12.     Admit the allegations in paragraph 12.

       13.     Admit the allegations in paragraph 13.

14.     Admit the allegations in paragraph 14, as to defendants AMG and Neil Moffitt, but neither admit nor deny the allegations as to the remaining defendants refer to the remaining defendants' answer.

15.     State that paragraph 14 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

16.     State that paragraph 16 sets forth a conclusion of law to which no response is required and refer to the Termination Agreement for a true and correct statement of the contents therein.

17.     State that paragraph 17 sets forth a conclusion of law to which no response is required and refers to the Employment Agreement for a true and correct statement of the contents therein.

18.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 18.

19.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 19.

20.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 20.

21.     Admit the allegation in paragraph 21.

22.     Admit the allegations in paragraph 22.

23.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 23.

24.     Deny knowledge or information sufficient to form a belief as to the allegations in paragraph 24.

25.    Admit that TMG executed an agreement dated as of May 19, 2006 (the "Purchase Agreement") and refer to the Purchase Agreement for a true and correct statement of the contents therein.

26.    Deny the allegations set forth in paragraph 26.

27.    Deny the allegations set forth in paragraph 27.

28.    Deny the allegations in paragraph 28, except deny knowledge or information sufficient to form a belief as to the truth or falsity of what Mr. Fox and Mr. Heiman allegedly were "shocked to learn of" or what they concluded.

29.    Deny the allegations set forth in paragraph 29.

30.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 30, except deny that defendants caused TMG to suffer any losses and further deny that defendants are responsible for any such losses.

31.    Deny the allegations set forth in paragraph 31.

32.    Deny the allegations in paragraph 32 except admit that both TMG and Angel had been sued for trademark infringement by an individual claiming ownership of the name "Global Gathering" and deny knowledge or information sufficient to form a belief as to the amount of legal fees TMG paid its attorneys.

33.    Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 33.

34.    Deny that the allegations in paragraph 34 contain an accurate or complete recitation of the terms of the Termination Agreement and refer to the Termination Agreement for a true and correct statement of the contents therein.

35.    Deny that the allegations in paragraph 35 contain an accurate or complete recitation of the terms of the Termination Agreement and refer to the Termination Agreement for a true and correct statement of the contents therein.

36.    Deny that the allegations in paragraph 36 contain an accurate or complete recitation of the terms of the Termination Agreement and refer to the Termination Agreement for a true and correct statement of the contents therein.

37.    Deny that the allegations in paragraph 37 contain an accurate or complete recitation of the terms of the Termination Agreement and refer to the Termination Agreement for a true and correct statement of the contents therein.

38.    Deny that the allegations in paragraph 38 contain an accurate or complete recitation of the terms of the Termination Agreement and refer to the Termination Agreement for a true and correct statement of the contents therein.

39.    Refer to the Termination Agreement for a true and correct statement of the contents therein.

40.    Deny the allegations contained in paragraph 40.

41.    State that paragraph 41 sets forth a legal conclusion to which a response is not required and deny information and knowledge sufficient to form a belief as to the truth of the factual allegations in paragraph 41 concerning whether TMG was informed or advised of the various matters described in paragraph 41.

42.    State that paragraph 42 sets forth a legal conclusion as to which a response is not required, deny information and knowledge sufficient to form a belief as to whether TMG was required to pay the landlord $47,000 to terminate the lease; and deny the remaining factual

allegations in paragraph 42 except that shortly after executing the Termination Agreement, Moffitt advised Heiman and Fox that he was moving out of the space referred to in paragraph 42.

43.    Deny information and knowledge sufficient to form a belief as to the truth of the factual allegations in paragraph 43 except that McCabe had worked for TMG for more than two years and was the account manager for Bacardi.

44.    Refer to the Employment Agreement for a true and correct statement of the contents therein.

45.    Refer to the Employment Agreement for a true and correct statement of the contents therein.

46.    Refer to the Employment Agreement for a true and correct statement of the contents therein.

47.    Deny information and knowledge sufficient to form a belief as to the truth of the factual allegations in paragraph 47 and refer to the Modification Agreement for a true and correct statement of the contents therein.

48.    Deny information and knowledge sufficient to form a belief as to the truth of the factual allegations in paragraph 48 and refer to the Modification Agreement for a true and correct statement of the contents therein.

49.    Deny information and knowledge sufficient to form a belief as to the truth of the factual allegations in paragraph 49.

50.    State that paragraph 50 sets forth conclusions of law to which a response is not required and denies the allegations therein so far as factual averments are made.

51.    Deny the allegations in paragraph 51.

52.    State that paragraph 52 sets forth conclusions of law to which a response is not required and denies the allegations therein so far as factual averments are made.

53.    Deny the allegations in paragraph 53.

54.    State that paragraph 54 sets forth conclusions of law to which a response is not required and denies the allegations therein so far as factual averments are made.

55.    Deny the allegations in paragraph 55.

56.    Repeat and reallege each and every answer contained in paragraphs 1 through 55 hereof as if set forth in full herein.

57.    Deny the allegations in paragraph 57.

58.    State that paragraph 59 sets forth conclusions of law to which a response is not required.

59.    State that paragraph 59 sets forth conclusions of law to which a response is not required.

60.    Repeat and reallege each and every answer contained in paragraph 1 through 59 hereof as if set forth in full herein.

61.    Refer to the Termination Agreement for a true and correct statement of the contents therein.

62.    Refer to the Employment Agreement for a true and correct statement of the contents therein.

63.    State that paragraph 63 sets forth conclusions of law to which a response is not required and deny that any of the defendants violated any lawful obligation to plaintiffs.

64.    State that paragraph 64 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

65.    State that paragraph 65 sets forth conclusions of law to which a response is not required and denies the allegations therein so far as factual averments are made.

66.    State that paragraph 66 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

67.    State that paragraph 67 sets forth conclusions of law to which a response is not required and deny that plaintiffs are entitled to any legal or equitable relief.

68.    Defendants repeat and reallege each and every allegation contained in paragraphs 1 through 67 hereof as if set forth herein.

69.    State that paragraph 68 sets forth conclusions of law to which a response is not required and refer to the Termination Agreement for a true and correct statement of the contents therein.

70.    State that paragraph 70 sets forth conclusions of law to which a response is not required and refer to the Termination Agreement for a true and correct statement of the contents therein.

71.    Refer to the Termination Agreement for a true and correct statement of the contents therein.

72.    Refer to the Employment Agreement for a true and correct statement of the contents therein.

73.    State that paragraph 73 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

74.    State that paragraph 74 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

75.    State that paragraph 75 sets forth conclusions of law as to which a response is not required and deny the allegations therein so far as factual averments are made.

76.    State that paragraph 76 sets forth conclusions of law as to which a response is not required and deny the allegations therein so far as factual averments are made.

77.    Repeat and reallege each and every allegation contained in paragraphs 1 through 77 hereof as if set forth in full herein.

78.    State that paragraph 78 sets forth conclusions of law to which no response is required.

79.    State that paragraph 79 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

80.    State that paragraph 80 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

81.    State that paragraph 81 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

82.    Repeat and reallege each and every answer contained in paragraphs 1 through 81 hereof as if set forth in full herein.

83.    State that paragraph 83 sets forth conclusions of law to which no response is required.

84.    State that paragraph 84 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

85.    State that paragraph 85 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

86.     State that paragraph 86 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

87.     Repeat and reallege each and every answer contained in paragraphs 1 through 85 hereof as if set forth in full herein.

88.     State that paragraph 88 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

89.     State that paragraph 89 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

90.     State that paragraph 90 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

91.     Repeat and reallege each and every answer contained in paragraphs 1 through 91 hereof as if set forth in full herein.

92.     State that paragraph 92 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

93.     State that paragraph 93 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

94.     State that paragraph 94 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

95.     State that paragraph 95 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

96.     Repeat and reallege each and every answer contained in paragraphs 1 through 95 hereof as if set forth in full herein.

97.    State that paragraph 97 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

98.    Deny the allegations in paragraph 98.

99.    Deny the allegations in paragraph 99.

100.    State that paragraph 100 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

101.    State that paragraph 101 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

102.    State that paragraph 102 sets forth conclusions of law to which a response is not required, deny the allegations therein so far as factual averments are made, and further state that Plaintiffs have withdrawn their application for immediate injunctive relief.

103.    Repeat and reallege each and every answer contained in paragraphs 1 through 102 hereof as if set forth in full herein.

104.    Deny the allegations contained in paragraph 104.

105.    Deny the allegations contained in paragraph 105.

106.    State that paragraph 106 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

107.    State that paragraph 107 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

108.    State that paragraph 108 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

109.    State that paragraph 109 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

110.    State that paragraph 110 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made, and further state that Plaintiffs have withdrawn their application for immediate injunctive relief.

111.    Repeat and reallege each and every answer contained in paragraphs 1 through 110 hereof as if set forth in full herein.

112.    State that paragraph 112 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

113.    State that paragraph 113 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

114.    State that paragraph 114 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

115.    State that paragraph 115 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

116.    State that paragraph 116 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

117.    Repeat and reallege each and every answer contained in paragraphs 1 through 116 hereof as if set forth in full herein.

118.    Deny information and knowledge sufficient to form a belief as to the allegations in paragraph 118.

119.    Deny information and knowledge sufficient to form a belief as to the allegations in paragraph 119.

120.    Deny information and knowledge sufficient to form a belief as to the allegations in paragraph 120.

121.    Deny information and knowledge sufficient to form a belief  as to the allegations in paragraph 121.

122.    Deny information and knowledge sufficient to form a belief  as to the allegations in paragraph 122.

123.    Deny information and knowledge sufficient to form a belief  as to the allegations in paragraph 123.

124.    Deny information and knowledge sufficient to form a belief  as to the allegations in paragraph 124.

125.    State that paragraph 125 sets forth conclusions of law to which a response is not required and state that they lack information and knowledge sufficient to form a belief so far as factual averments are made.

126.    State that paragraph 126 sets forth conclusions of law to which a response is not required and state that they lack information and knowledge sufficient to form a belief so far as factual averments are made.

127.    State that paragraph 127 sets forth conclusions of law to which a response is not required and state that they lack information and knowledge sufficient to form a belief so far as factual averments are made.

128.    State that paragraph 128 sets forth conclusions of law to which a response is not required.

129.    Repeat and reallege each and every answer contained in paragraphs 1 through 128 hereof as if set forth in full herein.

130.    Deny the allegations in paragraph 130.

131.    State that paragraph 131 sets forth conclusions of law to which a response is not required and deny the allegations therein so far as factual averments are made.

132.    State that paragraph 132 sets forth conclusions of law to which a response is not required.

133.    Repeat and reallege each and every answer contained in paragraphs 1 through 132 hereof as if set forth in full herein.

134.    Refer to the Termination Agreement for a true and correct statement of the contents therein.

135.    State that paragraph 135 sets forth conclusions of law to which a response is not required and deny knowledge sufficient to form a belief as to the amount of attorneys' fees TMG will incur in connection with the prosecution of the claims.

136.    State that paragraph 136 sets forth conclusions of law to which a response is not required and, to the extent a response is required, deny that TMG is entitled to indemnification from Angel and Moffitt.

## AFFIRMATIVE DEFENSES

### First Defense

137.    Plaintiffs fail to state a claim upon which relief may be granted.

### Second Defense

138.    Plaintiffs' equitable claims are barred in whole or in part, by reason of plaintiff's unclean hands.

### Third Defense

139.    Plaintiffs' claims are barred in whole or in part, by the principle of waiver.

## Fourth Defense

140.  Plaintiffs' claims are barred, in whole or in part, by the principle of laches.

## Fifth Defense

141.  Plaintiffs' claims are barred, in whole or in part, by the principal of waiver.

## Sixth Defense

142.  Plaintiffs' claims are barred, in whole or in part, by the failure of a condition precedent.

## Seventh Defense

143.  Plaintiffs' claims are barred in whole or in part, by reason of plaintiffs' prior material breach of the Termination Agreement.

## Eighth Defense

144.  Plaintiffs' claims are barred in whole or in part by the principles of set-off and/or recoupment.

## COUNTERCLAIMS

### The Parties

1.  Counterclaim Plaintiff Angel Music Group, Ltd. ("AMG") is a United Kingdom company with its principal place of business at 2904 W. Horizon Ridge Parkway, Suite 121, Henderson, Nevada.  AMG is engaged in the business of nightlife consulting, interactive design, and producing music festivals.

2.  Counterclaim Defendant The Management Group, LLC ("TMG") is, upon information and belief, a New York limited liability company with its principal place of business located at 485 Madison Avenue, New York, New York.  Upon information and belief, TMG operates events and lifestyle websites and an online ticketing agency.

Jurisdiction

3.      The Court has supplemental jurisdiction over these counterclaims pursuant to 28 USC § 1367, as these counterclaims are directly related to the claims asserted by plaintiffs against defendants and therefore form part of the same case or controversy under Article III of the United States Constitution.  In addition, the Court has original jurisdiction over the First, Second, Third and Sixth counterclaims pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy is, upon information and belief, in excess of $75,000 exclusive of interest and costs.

Background Facts

A. The Florida Litigation

4.      In or about early 2006, AMG and TMG jointly planned and produced a music festival in Miami, Florida called the "Global Gathering Festival."

5.      On or about February 22, 2006, AMG and TMG were both named as defendants in a trademark infringement lawsuit commenced in the United States District Court for the Southern District of Florida entitled: *Global HTM Promotional Group, Inc. v. Angel Music Group LLC, et. al.*, Case No: 06-20441-CIV (the "Florida Action").  The complaint in the Florida Action alleged that the plaintiff is the rightful owner of the name "Global Gathering" and sought damages and injunctive relief from both AMG and TMG as a result of their allegedly unauthorized use of that name in connection with the Global Gathering Festival.

6.      From the commencement of the Florida Action until approximately May 2007, AMG and TMG were jointly represented by the law firm of Notaro & Micalos, P.C. ("NMPC").  Thereafter, NMPC withdrew as counsel for defendants and AMG and TMG were represented by new counsel in the Florida Action.

7.    In or about June 2007, AMG settled with the plaintiff in the Florida Action and was released from all claims against it in that action. Upon information and belief, the Florida Action remains active as against TMG.

B. The Merger Agreement and the Termination Agreement

8.    Notwithstanding the Florida Action, AMG and TMG entered into an agreement dated as of May 19, 2006, pursuant to which the two companies agreed to be merged through TMG's purchase of all outstanding equity interests in AMG (the "Purchase Agreement"). Although the Purchase Agreement contemplated the sale of AMG's shares to TMG, that sale was never consummated.

9.    Between May 19, 2006 and March 2007, it became increasingly apparent to the parties that the merger contemplated by the Purchase Agreement was not in their best interests. Accordingly, both AMG and TMG agreed to terminate the May 19, 2006 Merger Agreement by entering into a new agreement dated as of March 1, 2007 (the "Termination Agreement").

10.   Section 3 of the Termination Agreement contains a provision addressing AMG's and TMG's respective rights and obligations to pay the legal expenses incurred in the Florida Action. That section provides, inter alia, that TMG would be solely responsible for payment of all of NMPC's legal fees incurred as of the date of the Termination Agreement, and that AMG would be responsible for legal expenses incurred after the date of the Termination Agreement. Specifically, section 3(a) of the Termination Agreement provides that:

> (a) AMG and the Company have shared certain legal expenses arising in connection with the trademark infringement case (the "Global Gathering Litigation") that is on-going in Florida as a result of their co-promotion of the Global Gathering event held in Miami in March 2006 and prior to entering into the Purchase Agreement.   There currently remains outstanding fees and

expenses due to two law firms as follows: 1) Notaro & Michalos are owed a balance for all work up to the date of this Agreement of $209,069.04 and 2) John Rosenberg's firm are owed a balance for all work up to the date of this Agreement of $78,410. The Company agrees to take responsibility for the payment of all outstanding legal costs that have been incurred in this case up to the date of this Agreement save for 50% of the balance of fees owed to John Rosenberg's firm. Therefore the Company agrees to take responsibility for the full amount of the balance due to Notaro and Michalos. The Company agrees to take responsibility to pay John Rosenberg's firm $39,205 and AMG agrees to take responsibility to pay John Rosenberg's firm $39,205. AMG agrees that all legal expenses (being costs incurred by legal companies in relation to the Global Gathering Litigation) incurred in connection with the Global Gathering Litigation after the date of this Agreement are the responsibility of AMG.

(b) AMG further agrees to use its best efforts to cooperate in the Company's efforts to extricate itself from the Global Gathering Litigation, it being understood by the Company that AMG cannot in anyway ensure that this happens.

11.    Section 13 of the Termination Agreement also contains an indemnification provision that provides for payment of reasonable attorneys' fees incurred by a party to the Termination Agreement in connection with a dispute thereunder. Specifically, Section 13 states that:

13. Indemnification. The Company, AMG and the Sellers (jointly and severally) shall each indemnify, save and hold harmless the other and its successors, assigns, affiliates, agents and contractors, and their partners, officers, directors, and employees, from and against any damage, loss, claim, judgment or other liability or expense (including but not limited to reasonable attorneys' fees (including attorneys' fees incurred by a party to this Agreement in connection with a dispute hereunder)) which may in any way arise out of any breach of any representation, warranty, agreement or covenant set forth in this Agreement or any act or omission arising in connection with this Agreement; provided such claim has been adjudicated or settled with the indemnifying party's consent, which consent shall not be unreasonably withheld. The indemnifying party acknowledges and agrees that the indemnified party reserves the right, without being required to do so, and without waiver of any indemnity hereunder, to defend any claim, action or lawsuit

coming within the scope of this indemnity provision.  The party to
be indemnified shall promptly notify the indemnifying party of any
such claim and indemnifying party shall have the right to
participate in the defense thereof with counsel of its choice at its
expense.    This paragraph shall survive the termination or
expiration of this Agreement.

C.  TMG's Inducement of AMG to Pay a Portion of NMPC's Legal Fees

12.    On or about June 11, 2007, NMPC commenced an action  against AMG
and TMG in the Supreme Court of the State of New York, County of New York (Index No.
07/601949) (the "NMPC Action"), seeking payment of approximately $210,000 in legal fees it
claimed it was owed from its earlier representation of AMG and TMG in the Florida Action.
Under section 3(a) of the Termination Agreement, TMG was solely responsible for payment of
those legal fees.  Moreover, under section 13 of the Termination Agreement, TMG was obligated
to indemnify AMG and assume all of the legal costs incurred by AMG in the NMPC Action.

13.    In or about June 2007, TMG and AMG discussed a possible resolution of
the NMPC Action by allocating between them payment of the legal fees demanded by NMPC.

14.    Although TMG was solely responsible for payment of NMPC's legal fees
pursuant to section 3(a) of the Termination Agreement and was required to indemnify AMG for
all costs and fees AMG incurred in the NMPC Action under section 13 of the Termination
Agreement, TMG represented to AMG that if AMG paid a portion of NMPC's legal fees, TMG
would bear all of the future legal fees incurred in the Florida Action.  Those representations were
made by Lee Heiman, President of TMG, to AMG's majority shareholder Neill Moffitt, both
verbally and in writing, between June 4, 2007 and August 2, 2007.

15.    In exchange for TMG's representations and promises that it would assume
responsibility for all legal costs in the Florida Action, and in reliance on those representations
and promises, AMG agreed that TMG would be required to pay only $75,000 of NMPC's fees

and AMG would pay the balance of NMPC's legal fees (the "Allocation Agreement"). In further reliance on TMG's representations and promises to assume responsibility for all future legal fees in the Florida Action, AMG executed an August 2, 2007 Settlement Agreement with NMPC and TMG which purported to release TMG from any claims regarding the payment of NMPC's legal fees. That Settlement Agreement acknowledges the existence of the Allocation Agreement between TMG and AMG but does not recite the terms of the Allocation Agreement.

16.     As a result of TMG's inducement of AMG to enter into the Allocation Agreement, AMG paid $35,000 of NMPC's legal fees incurred in the Florida Action and did not seek indemnification from TMG, notwithstanding TMG's contractual obligation to pay all of NMPC's fees and indemnify AMG under sections 3(a) and 13 of the Termination Agreement.

17.     TMG's subsequent conduct further demonstrates that it had promised to assume responsibility for all legal costs in the Florida Action. From August 2, 2007 through February 26, 2008 – nearly seven (7) months – TMG made no effort to seek payment from AMG for any of the legal costs incurred in the Florida Action. Upon information and belief, however, TMG continued to incur and pay substantial legal costs in the Florida Action during that seven month period. Upon information and belief, the legal costs incurred in the Florida Action after August 2, 2007 exceed the sum of $75,000.

18.     As described more fully below, however, TMG never intended to assume responsibility for the legal costs incurred in the Florida Action. Instead, TMG falsely promised to assume responsibility for the legal costs in the Florida Action in order to deceive AMG into paying a portion of NMPC's legal fees and releasing TMG from its indemnification obligations under the Termination Agreement. Moreover, from August 2007 through February 26, 2008,

TMG deliberately concealed from AMG its true intention to ultimately seek to have AMG bear the legal costs of the Florida Action at a future date.

19.    If AMG had not been deceived by TMG into believing that TMG had assumed responsibility for the legal costs of the Florida Action, AMG would have enforced TMG's obligation to pay all of NMPC's legal fees and indemnify AMG in the NMPC Action. AMG also would have carefully monitored the Florida Action and the costs incurred therein, pursued alternate litigation strategies to lower those costs and would have either lowered such costs or eliminated them completely through a settlement of the Florida Action.

20.    On or about February 26, 2008, AMG learned for the first time that TMG's June 2007 representations and promises to assume responsibility for all legal costs in the Florida Action were knowingly false at the time they were made and were intended to deceive TMG into paying a portion of NMPC's legal costs. Specifically, on or about February 26, 2008, TMG commenced this action against AMG seeking, inter alia, payment of all legal costs TMG has incurred in the Florida Action. In so doing, TMG has taken the position in this action that it never intended to assume responsibility for the ongoing legal costs in the Florida Action despite its earlier promises to AMG and its concealment of its true intentions for nearly seven months.

## FIRST COUNTERCLAIM
### (Declaratory Judgment)

21.    AMG repeats and realleges the allegations set forth in paragraphs 1 through 20 as if fully set forth herein.

22.    Based on the foregoing, a present and justiciable controversy presently exists between TMG and AMG as to whether AMG is responsible for payment of legal costs incurred in the Florida Action.

23.    TMG claims that AMG is responsible for payment of the legal costs incurred in the Florida Action based on the provisions of section 3(a) of the Termination Agreement.

24.    AMG claims that the terms of section 3(a) were modified by the parties and that TMG agreed to assume all of the legal costs incurred in the Florida Action in exchange for AMG's payment of a portion of NMPC's legal fees and release of TMG's indemnification obligations. AMG further claims that

25.    Based on the foregoing, AMG requests a judgment from this Court declaring that TMG is solely responsible for the legal costs incurred in the Florida Action.

## SECOND COUNTERCLAIM
### (Promissory Estoppel)

26.    AMG repeats and realleges the allegations set forth in paragraphs 1 through 25 as if fully set forth herein.

27.    TMG clearly and unambiguously promised AMG that if AMG paid a portion of NMPC's legal fees, then the provisions of section 3(a) of the Termination Agreement would be modified and TMG would assume responsibility for all legal costs incurred in the Florida Litigation. TMG's subsequent payment of the legal costs incurred in the Florida Action, and its failure to seek any payment from AMG over the following seven months for those costs, further demonstrates that TMG had promised to assume responsibility for those costs.

28.    AMG relied to its detriment on TMG's promises and conduct by entering into the Allocation Agreement, paying a significant portion of NMPC's legal fees, releasing TMG from its obligations to pay all of NMPC's fees and indemnify AMG, and refraining from

taking any steps to reduce the legal costs of the Florida Action or settle the Florida Action over the following seven months.

29.    AMG's reliance on TMG's promises and conduct was reasonable, inasmuch as TMG received full and fair consideration for its promise to bear all legal costs of the Florida Litigation and TMG made no attempt to seek any payments from AMG for those legal costs for nearly seven months.

30.    AMG's reliance on TMG's promises and conduct was also foreseeable by TMG, inasmuch as TMG knew that AMG had no reason to pay any portion of NMPC's legal fees or release TMG from its indemnification obligations but for AMG's reliance on TMG's promise to assume responsibility for all legal costs of the Florida Action. In addition, it was foreseeable to TMG that AMG would not monitor the legal costs of the Florida Action or take steps to reduce such costs based on TMG's promise to assume responsibility for such costs, as well as TMG's actual assumption of such costs over the next seven months.

31.    In addition to causing AMG to pay a portion of NMPC's legal fees and release TMG from its indemnification obligations, TMG's promise to assume responsibility for the costs of the Florida Action and its assumption of all such costs for the next seven months effectively deprived AMG of the ability to monitor the costs of the Florida Action as they were incurred, take all steps necessary to lower such costs and try to settle the Florida Action in order to avoid excessive litigation costs.

32.    Under these circumstances, where TMG: (a) caused AMG to reasonably believe that it would not be responsible for future legal costs in the Florida Action; (b) induced AMG into paying a portion of NMPC's legal fees; (c) induced AMG into releasing TMG from its obligation to pay NMPC's fees; (d) induced AMG into releasing TMG from its obligation to

indemnify AMG for the costs incurred in the NMPC Action; and (e) fraudulently concealed from AMG its true intentions for approximately seven months, thereby depriving AMG from taking steps to lower and/or eliminate the legal costs incurred in the Florida Action, it would be unconscionable to deny enforcement of TMG's promise to bear all costs of the Florida Action and require AMG to now pay those costs.

33.    Based on the foregoing, TMG is promissorily estopped from denying that it is responsible for payment of all legal costs incurred in the Florida Action.

## THIRD COUNTERCLAIM
### (Equitable Estoppel)

34.    AMG repeats and realleges the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

35.    TMG clearly and unambiguously represented to AMG that if AMG were to pay a portion of NMPC's legal fees, then TMG would assume responsibility for all legal costs incurred in the Florida Action thereby modifying the terms of section 3(a) of the Termination Agreement. TMG's subsequent failure over the following seven months to seek any payment from AMG for the legal costs incurred in the Florida Action further demonstrates that TMG had promised to assume sole responsibility for those costs.

36.    TMG's representations regarding its assumption of responsibility for legal costs in the Florida Action were knowingly false, however, and TMG had no intention of assuming responsibility for those costs. Instead, TMG deliberately misrepresented its intention to assume responsibility for those legal costs in order to induce AMG to pay a significant portion of NMPC's legal fees. TMG deliberately concealed its true intentions from AMG by paying the legal costs in the Florida Action from August 2, 2007 through February 26, 2008 without seeking

any payment from AMG. TMG's concealment of its true intentions was intended to prevent AMG from taking any steps to monitor the Florida Action, reduce the legal costs incurred in the Florida Action and try to settle the Florida Action.

37.    AMG relied to its detriment on TMG's promises and conduct by entering into the Allocation Agreement, paying a significant portion of NMPC's legal fees, releasing TMG from its obligation to pay all of NMPC's fees and indemnify AMG, and refraining from taking any steps to reduce the legal costs of the Florida Action or settle the Florida Action during the past seven (7) months.

38.    AMG's reliance on TMG's promises and conduct was reasonable, inasmuch as TMG received full and fair consideration for its promise to bear all future legal costs of the Florida Litigation and TMG made no attempt to seek payment from AMG for those legal costs for nearly seven (7) months after promising to assume responsibility for those costs.

39.    AMG's reliance on TMG's promises and conduct was also foreseeable by TMG, inasmuch as TMG knew that AMG had no reason to pay any portion of NMPC's legal fees but for its reliance on TMG's promise to assume responsibility for all future costs of the Florida Action. In addition, it was foreseeable to TMG that AMG would not monitor the legal costs of the Florida Action or take steps to reduce such costs based on TMG's promise to assume responsibility for such costs, as well as TMG's actual assumption of such costs over the next seven (7) months.

40.    In addition to causing AMG to pay a portion of NMPC's legal fees and release TMG from its indemnification obligations, TMG's promise to assume responsibility for the costs of the Florida Action and its assumption of all such costs for the next seven months effectively deprived AMG of the ability to monitor the costs of the Florida Action as they were

incurred, take all steps necessary to lower such costs and try to settle the Florida Action in order to avoid excessive litigation costs.

41.    Based on the foregoing, TMG is equitably estopped from denying that it is responsible for payment of all legal fees incurred in the Florida Action.

## FOURTH COUNTERCLAIM
### (Rescission)

42.    AMG repeats and realleges that allegations set forth in paragraph 1 through 41 as if fully set forth herein.

43.    Between June 4, 2007 and August 2, 2007, TMG represented to AMG that it would assume all future legal costs associated with the Florida Action if AMG paid a significant portion of NMPC's legal fees.

44.    TMG's representations to AMG were intended to induce AMG to pay a significant portion of NMPC's legal fees and release TMG from its contractual obligation to pay all of NMPC's legal fees and indemnify AMG for the costs incurred in the NMPC Action.

45.    TMG's representations to AMG were knowingly false, however, and TMG never intended to assume responsibility for future legal fees incurred in the Florida Action. Instead, TMG intentionally deceived AMG in order to induce AMG to enter into the Allocation Agreement, pay a significant portion of NMPC's legal fees and release TMG from its indemnification obligations, while at the same time fully intending to have AMG bear all of the legal costs of the Florida Action at some future date.

46.    In reliance on TMG's misrepresentations that it would assume responsibility for all costs of the Florida Action, AMG entered into the Allocation Agreement with TMG pursuant to which AMG agreed to pay, and did pay, approximately $35,000 of

NMPC's legal fees, despite the fact that AMG had no prior legal obligation to pay those fees. In addition, AMG relied on TMG's misrepresentations by releasing TMG from its obligation to fully indemnify AMG in the NMPC Action.

47.    Based on TMG's fraudulent inducement of AMG's $35,000 payment to NMPC and release of TMG's indemnification obligations, the Allocation Agreement referenced in the NMPC Settlement Agreement should be rescinded and TMG should pay AMG the sum of $35,000, as well as all costs AMG incurred in the NMPC Action, in order to restore the parties to the same position they were in prior to the Allocation Agreement.

## FIFTH COUNTERCLAIM
### (Unjust Enrichment)

48.    AMG repeats and realleges that allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49.    TMG clearly and unambiguously promised AMG that if AMG were to contribute $35,000 towards payment of NMPC's legal fees, then TMG would assume responsibility for all future legal fees incurred in the Florida Action.

50.    AMG relied on TMG's promises by entering into the Allocation Agreement, paying a significant portion of NMPC's legal fees and releasing TMG from its obligation to fully indemnify AMG in the NMPC Action.

51.    As a result of TMG's conduct, TMG has been unjustly enriched in the amount of $35,000 as well as an amount equal to all of the costs incurred by AMG in the NMPC Action.

52.    The circumstances are such that in equity and good conscience, TMG must pay AMG the sum of $35,000, as well as all costs incurred in the NMPC Action.

## SIXTH COUNTERCLAIM
### (Indemnification)

53.   AMG repeats and realleges the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.   Section 13 of the Termination Agreement between the parties requires TMG to indemnify AMG for its reasonable attorneys' fees, "including attorneys' fees incurred by a party to [the Termination Agreement] in connection with a dispute [there]under" which may arise out of "any breach of any representation, warranty, agreement or covenant set forth in this Agreement or any act or omission arising in connection with [the Termination Agreement]," provided such claims are either adjudicated or settled with the indemnifying parties' consent.

55.   TMG's claims against AMG, and AMG's counterclaims against TMG, constitute disputes under the Termination Agreement that arise from acts and omissions arising in connection with the Termination Agreement.

56.   Upon information and belief, AMG will incur more than $75,000 in attorneys' fees in connection with its defense against the claims asserted by TMG under the Termination Agreement.

57.   Based on the foregoing, AMG is entitled to indemnification from TMG for the reasonable attorneys' fees incurred by AMG in this action following the final adjudication of this action.

**WHEREFORE**, Defendants Angel Music Ltd. and Neil Moffitt respectfully request that judgment be entered dismissing the Complaint with prejudice and awarding Defendants the following relief:

1.   On AMG's First Counterclaim, a judgment from this Court declaring that TMG is solely responsible for the legal costs incurred in the Florida Action;

2.       On AMG's Second and Third Counterclaims, judgment declaring that TMG is estopped from asserting its claim that AMG is responsible for legal fees incurred in the Florida Action;

2.       On AMG's Fourth and Fifth Counterclaims, judgment in the amount of $35,000 plus an amount equal to all of the costs AMG incurred in the NMPC Action, plus interest;

3.       On AMG's Sixth Counterclaim, an award of AMG's reasonable attorneys' fees upon the final adjudication of this action; and

4.       Such other and further relief that the Court deems just and proper.

Dated: New York, New York
       May 19, 2008

                          THE LAW OFFICES OF RONALD RICHARDS
                          AND ASSOCIATES
                          Ronald Richards, Esq
                          P.O. Box 11480
                          Beverly Hills, California 90213
                          (310) 556-1001

                          -and-

                          EPSTEIN BECKER & GREEN, P.C.

                          Robert D. Goldstein
                          Peter L. Altieri
                          Michael Liberman
                          250 Park Avenue
                          New York, New York 10177
                          (212) 351-4500

                          Attorneys for Defendants Neil Moffitt
                          and Angel Music Group Ltd.